**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Keith Schoenfeld and Jennifer Schoenfeld,<br><br>    Plaintiffs,<br><br>vs.<br><br>Dr. Nicholas Yokan, Sioux Valley Hospital, Sanford Medical Center, Sioux Valley Hospitals & Health System, Sanford Health, Van Demark Orthopedic Specialists, Sioux Valley Clinic, Sanford Clinic Orthopedics and Sports Medicine and Sanford Clinic,<br><br>    Defendants. | Civil File No. _____<br><br>**COMPLAINT**<br><br>**WITH DEMAND FOR JURY TRIAL ON ALL ISSUES** |

---

Keith Schoenfeld and Jennifer Schoenfeld, for their Complaint against Defendants Dr. Nicholas Yokan, Sioux Valley Hospital, Sanford Medical Center, Sioux Valley Hospitals & Health System, Sanford Health, Van Demark Orthopedic Specialists, Sioux Valley Clinic, Sanford Clinic Orthopedics and Sports Medicine and Sanford Clinic, state and allege as follows:

**PARTIES**

1. Plaintiffs Keith Schoenfeld and Jennifer Schoenfeld are residents of the State of Minnesota, town of Lakefield, and have been residents of Minnesota at all times relevant to the allegations herein. Jennifer Schoenfeld is the wife of Keith Schoenfeld.

2. Upon information and belief at all times relevant to the allegations herein, Defendant Dr. Nicholas Yokan was a resident of South Dakota, residing at or about 1309 Dundee Drive, Sioux Falls, South Dakota 57106.

3. Upon information and belief at all times relevant to the allegations herein, Defendant Sioux Valley Hospital was a company incorporated under the laws of the State of

South Dakota with its headquarters and principal place of business located at or about 1305 West 18th Street, Sioux Falls, South Dakota 57105.

4. Upon information and belief at all times relevant to the allegations herein, Defendant Sioux Valley Hospital also operated as, and/or was known as, Sioux Valley Hospital USD Medical Center.

5. Upon information and belief at all times relevant to the allegations herein, Defendant Sanford Medical Center was a company incorporated under the laws of the State of South Dakota with its headquarters and principal place of business located at or about 1305 West 18th Street, Sioux Falls, South Dakota 57105.

6. Upon information and belief, Defendant Sanford Medical Center operates under the fictitious name, and/or is also known as, Sanford USD Medical Center.

7. Upon information and belief, on or about February 12, 2007 Sioux Valley Hospital changed its name to Sanford Medical Center. Upon information and belief, all liabilities and obligations of Sioux Valley Hospital, including the liabilities for the damages alleged and claimed herein, were transferred from Sioux Valley Hospital to Sanford Medical Center on or about February 12, 2007.

8. Upon information and belief at all times relevant to the allegations herein, Defendant Sioux Valley Hospitals and Health System was a company incorporated under the laws of the State of South Dakota with its headquarters and principal place of business located at or about 1305 West 18th Street, Sioux Falls, South Dakota 57105.

9. Upon information and belief at all times relevant to the allegations herein, Defendant Sioux Valley Hospitals and Health System owned, operated, controlled and managed the facility known as Sioux Valley Hospital and/or Sioux Valley Hospital USD Medical Center.

10. Upon information and belief at all times relevant to the allegations herein, Defendant Sanford Health was a company incorporated under the laws of the State of South Dakota with its headquarters and principal place of business located at or about 1305 West 18th Street, Sioux Falls, South Dakota 57105.

11. Upon information and belief, on or about February 12, 2007 Sioux Valley Hospitals and Health System changed its name to Sanford Health. Upon information and belief, all liabilities and obligations of Sioux Valley Hospitals and Health System, including the liabilities for the damages alleged and claimed herein, were transferred from Sioux Valley Hospitals and Health System to Sanford Health on or about February 12, 2007.

12. Upon information and belief at all times relevant to the allegations herein, Defendant Van Demark Orthopedic Specialists was a partnership, association, or some other group of doctors holding themselves out to the public as a business entity of medical professionals providing medical services, with its principal place of business located at 1210 West 18th Street, Suite G01, Sioux Falls, South Dakota 57104.

13. Upon information and belief at all times relevant to the allegations herein, Defendant Sioux Valley Clinic was a company incorporated under the laws of the State of South Dakota with its headquarters and principal place of business located at or about 1305 West 18th Street, Sioux Falls, South Dakota 57105.

14. Upon information and belief at all times relevant to the allegations herein, Defendant Van Demark Orthopedic Specialists and Defendant Sioux Valley Clinic also operated as, and/or were known as, Sioux Valley Clinic-Van Demark Orthopedic Specialists.

15. Upon information and belief at all times relevant to the allegations herein, Defendant Dr. Nicholas Yokan was an employee, partner and/or otherwise acted as an agent of Defendant Van Demark Orthopedic Specialists and/or Defendant Sioux Valley Clinic.

16. Alternatively, upon information and belief at all times relevant to the allegations herein, Defendant Dr. Nicholas Yokan was an employee and/or otherwise acted as an agent of Defendants Sioux Valley Hospital and Sioux Valley Hospitals and Health System.

17. Upon information and belief at all times relevant to the allegations herein, Defendant Sanford Clinic was a company incorporated under the laws of the State of South Dakota with its headquarters and principal place of business located at or about 1305 West 18th Street, Sioux Falls, South Dakota 57105.

18. Upon information and belief at all times relevant to the allegations herein, Defendant Sanford Clinic also operated as, and/or was known as, Sanford Clinic Orthopedics and Sports Medicine.

19. Alternatively, upon information and belief at all times relevant to the allegations herein, Sanford Clinic Orthopedics and Sports Medicine was a partnership, association, or some other group of doctors holding themselves out to the public as a business entity of medical professionals providing medical services, with its principal place of business located at 1210 West 18th Street, Suite G01, Sioux Falls, South Dakota 57104.

20. Upon information and belief at some time after October 2006, the entities known as Van Demark Orthopedic Specialists, Sioux Valley Clinic and Sioux Valley Clinic-Van Demark Orthopedic Specialists, changed their names and/or otherwise became a part of Sanford Clinic and all liabilities and obligations of Van Demark Orthopedic Specialists, Sioux Valley

4

Clinic and Sioux Valley Clinic-Van Demark Orthopedic Specialists, including the liabilities for the damages alleged and claimed herein, were transferred from those entities to Sanford Clinic.

21. Alternatively, upon information and belief at some time after October 2006, Van Demark Orthopedic Specialists, Sioux Valley Clinic and Sioux Valley Clinic-Van Demark Orthopedic Specialists changed their names and/or otherwise became a part of Defendant Sanford Clinic Orthopedics and Sports Medicine and all liabilities and obligations of Van Demark Orthopedic Specialists, Sioux Valley Clinic and Sioux Valley Clinic-Van Demark Orthopedic Specialists, including the liabilities for the damages alleged and claimed herein, were transferred from those entities to Sanford Clinic Orthopedics and Sports Medicine.

22. Alternatively, upon information and belief the liabilities of Van Demark Orthopedic Specialists, including the liabilities for the damages alleged and claimed herein, were not assumed or transferred and remain those of the entity, partners, principals and/or other controlling members of Van Demark Orthopedic Specialists.

23. Upon information and belief, Sanford Clinic now owns, operates, manages and otherwise controls the entities formerly known as Van Demark Orthopedic Specialists, Sioux Valley Clinic and Sioux Valley Clinic-Van Demark Orthopedic Specialists and has assumed all liabilities and obligations of those entities, including the liabilities for the damages alleged and claimed herein.

24. Upon information and belief, Sanford Clinic now owns, operates, manages and otherwise controls the entity known as Sanford Clinic Orthopedics and Sports Medicine and has assumed all liabilities and obligations of Sanford Clinic Orthopedics and Sports Medicine, including the liabilities for the damages alleged and claimed herein.

## JURISDICTION AND VENUE

25. Plaintiffs Keith Schoenfeld and Jennifer Schoenfeld are residents of the State of Minnesota, residing in the town of Lakefield. All of the named Defendants are residents of the State of South Dakota and/or are incorporated under the laws of the State of South Dakota with their headquarters and principal places of business in South Dakota.

26. All of the Defendants are subject to personal jurisdiction in the State of Minnesota as, upon information and belief at all times relevant to the allegations herein, and in addition to other facts and factors establishing jurisdiction and residency, each and every Defendant transacted business and/or solicited business in the State of Minnesota, and otherwise subjected themselves to jurisdiction in the State of Minnesota based on the allegations herein.

27. The parties to this proceeding are diverse as defined by 28 U.S.C. § 1332.

28. The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

29. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) and (c).

30. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(a) and (c).

## COUNT 1: NEGLIGENCE – MEDICAL MALPRACTICE

31. Plaintiffs reallege Paragraphs 1 through 30 as if fully set forth herein.

32. On October 10, 2006, Plaintiff Keith Schoenfeld was injured when he was kicked by a calf in his right leg while working on his farm in Lakefield, MN. He was taken by ambulance to Worthington Regional Hospital in Worthington, Minnesota for emergency care. Worthington Regional Hospital was part of the Sioux Valley Hospitals and Health System network. Mr. Schoenfeld was diagnosed with a tibial plateau fracture and advised that he had to

be transferred to Defendant Sioux Valley Hospital for further care and treatment of his leg, including necessary surgery.

33. On October 10, 2006 Defendant Sioux Valley Hospital and Defendant Dr. Nicholas Yokan, an orthopedic surgeon working at Sioux Valley Hospital, approved and accepted the transfer of Plaintiff Keith Schoenfeld from Worthington Hospital. Mr. Schoenfeld was then transferred to Defendant Sioux Valley Hospital. He arrived and came under the direct care of Defendants Sioux Valley Hospital and Dr. Nicholas Yokan at approximately 2:42 p.m. on October 10, 2006.

34. Defendant Dr. Nicholas Yokan examined Plaintiff Keith Schoenfeld following his arrival on October 10, 2006. Dr. Yokan performed a physical assessment of Mr. Schoenfeld, reviewed radiographs that Dr. Yokan ordered at Sioux Valley Hospital, and reviewed the results of a CT study conducted at Worthington Hospital. Dr. Yokan diagnosed an impacted and comminuted tibial plateau fracture requiring open reduction and internal fixation. Dr. Yokan scheduled surgery for the following day.

35. During his examination of Plaintiff Keith Schoenfeld on October 10, 2006, Defendant Dr. Nicholas Yokan found and noted signs and indications of compartment syndrome, including but not limited to, the facts that Mr. Schoenfeld "cannot flex and extend the ankle and toes on the right" and that he was in pain. Dr. Yokan did not conduct or order any tests, additional assessments or take any further action to diagnose compartment syndrome, rule out compartment syndrome or otherwise determine the cause of Mr. Schoenfeld's symptoms.

36. On October 10, 2006 Mr. Schoenfeld was suffering from compartment syndrome that went untreated.

37. Upon information and belief, generally, compartment syndrome is a condition that results from a build-up of internal pressure in a compartment of the human body caused by bleeding or swelling. Without prompt diagnosis and treatment, the increased pressure impairs blood supply to the affected part of the body. Without prompt diagnosis and treatment, nerve damage and muscle death occur. Compartment syndrome is a limb-threatening and life-threatening condition. Without prompt treatment, compartment syndrome leads to tissue necrosis, permanent functional impairment, and, if severe, renal failure and death.

38. On October 11, 2006, Defendant Dr. Yokan examined Mr. Schoenfeld and performed the open reduction with internal fixation surgery on Mr. Schoenfeld's right knee. Dr. Yokan did not conduct or order any tests, additional assessments or take any further action to determine the cause of Mr. Schoenfeld's inability to flex or extend his right ankle and toes, diagnose compartment syndrome, rule out compartment syndrome or otherwise determine the cause of Mr. Schoenfeld's symptoms.

39. On October 11, 2006 Mr. Schoenfeld was suffering from compartment syndrome that went untreated.

40. On October 12, 2006 Defendant Dr. Yokan again examined Mr. Schoenfeld. During his examination of Mr. Schoenfeld on October 12, 2006, Defendant Dr. Nicholas Yokan found and noted signs and indications of compartment syndrome, including but not limited to, the facts that Mr. Schoenfeld could not dorsiflex the toes on his right foot and was in pain. Dr. Yokan did not conduct or order any tests, additional assessments or take any further action to diagnose compartment syndrome, rule out compartment syndrome or otherwise determine the cause of Mr. Schoenfeld's symptoms.

41. On October 12, 2006 Mr. Schoenfeld was suffering from compartment syndrome that went untreated.

42. On October 13, 2006 Dr. Yokan again examined Mr. Schoenfeld. He found and noted signs and indications of compartment syndrome, including but not limited to, the facts that Mr. Schoenfeld could not actively dorsiflex the right ankle and toes. Dr. Yokan finally measured the compartment pressure in Mr. Schoenfeld's right leg and found it to be 97mm. Dr. Yokan finally diagnosed compartment syndrome and immediately took Mr. Schoenfeld to surgery. Dr. Yokan performed fasciotomies on Mr. Schoenfeld to relieve the compartment syndrome.

43. On October 17, 2006 Dr. Yokan took Mr. Schoenfeld to surgery for closure of the leg wounds resulting from the fasciotomies. Dr. Yokan debrided a portion of the dead muscle and tissue in Mr. Schoenfeld's leg and then grafted skin to cover the area. That skin graft failed to take due to underlying dead tissue and muscle. Mr. Schoenfeld was forced to undergo three additional surgeries to properly debride and close the wound.

44. Upon information and belief, between October 10, 2006 and October 20, 2006 Plaintiff Keith Schoenfeld was attended to by members of the medical staff at Sioux Valley Hospital. Medical staff attending Mr. Schoenfeld included Dr. Yokan, numerous other doctors, nurses, and other staff members. During the time he was at Sioux Valley Hospital between October 10, 2006 and October 13, 2006, Mr. Schoenfeld exhibited numerous symptoms and signs of compartment syndrome. None of the medical staff attending Mr. Schoenfeld timely diagnosed or treated the compartment syndrome.

45. Upon information and belief between October 10, 2006 and October 20, 2006, Defendant Dr. Nicholas Yokan acted as an employee and/or agent of Defendant Sioux Valley

9

Hospital, and/or as an employee, partner, and/or agent of Defendant Van Demark Orthopedic Specialists, and/or as an employee, partner and/or agent of Defendant Sioux Valley Clinic.

46. Upon information and belief, and based upon Defendant Dr. Nicholas Yokan acting as an employee and/or agent of Defendant Sioux Valley Hospital, and/or Defendant Van Demark Orthopedic Specialists, and/or Defendant Sioux Valley Clinic, each said Defendant is thereby vicariously liable for any negligence and breaches of the standard of care on the part of Dr. Yokan.

47. Upon information and belief at all times relevant to the allegations herein, Defendant Sioux Valley Hospitals and Health System owned, operated and managed the Defendant Sioux Valley Hospital, including all staff and physicians working at Sioux Valley Hospital, including but not limited to Defendant Dr. Yokan and the other medical staff attending to Plaintiff Keith Schoenfeld.

48. Upon information and belief, Dr. Yokan and the other medical staff attending to Plaintiff Keith Schoenfeld during his stay at Sioux Valley Hospital were acting as employees and/or agents of Defendant Sioux Valley Hospitals and Health System, thereby making Defendant Sioux Valley Hospitals and Health System vicariously liable for any negligence and breaches in the standard of care on the part of Dr. Yokan and the other medical staff attending to Plaintiff Keith Schoenfeld.

49. Upon information and belief, subsequent to October 2006, Defendant Sioux Valley Hospital changed its name to Defendant Sanford Medical Center and Sanford Medical Center assumed all liabilities of Sioux Valley Hospital and is therefore liable for the allegations herein.

50. Upon information and belief, subsequent to October 2006, Defendant Sioux Valley Hospitals and Health System changed its name to Defendant Sanford Health and Sanford Health assumed all liabilities of Sioux Valley Hospitals and Health System and is therefore liable for the allegations herein.

51. Upon information and belief, subsequent to October 2006, Defendants Sioux Valley Clinic and Van Demark Orthopedic Specialists changed their names and/or otherwise merged into Defendant Sanford Clinic Orthopedics and Sports Medicine and/or Defendant Sanford Clinic. At that time, Sanford Clinic Orthopedics and Sports Medicine and/or Sanford Clinic assumed all existing liabilities of Sioux Valley Clinic and Van Demark Orthopedic Specialists and are therefore liable for the allegations herein.

52. Alternatively, Van Demark Orthopedic Specialists did not transfer the liabilities claimed herein and the liabilities here claimed remain those of the entity, partners, principals and/or other controlling members of Van Demark Orthopedic Specialists.

53. Between October 10, 2006 and October 20, 2006 Mr. Schoenfeld was continually under the care and treatment of the Defendants and/or the Defendants' agents, employees and/or the Defendants' predecessors in interest, including but not limited to Dr. Yokan and other attending doctors, nurses and medical staff.

54. The Defendants owed legal duties to Plaintiff Keith Schoenfeld, including but not limited to, the duty to render care and treatment within the applicable medical standards of care.

55. In rendering medical services to Mr. Schoenfeld, the Defendants were negligent, committed medical malpractice and deviated from the applicable standards of care in a number of ways, including, but not limited to, the following:

    a. Dr. Yokan and other staff's failure to timely diagnose and treat the compartment syndrome in Mr. Schoenfeld's leg on October 10, 2006;

    b.    Dr. Yokan and other staff's failure to timely diagnose and treat the compartment syndrome in Mr. Schoenfeld's leg that continued on October 11, 2006;

    c.    Dr. Yokan and other staff's failure to timely diagnose and treat the compartment syndrome in Mr. Schoenfeld's leg that continued on October 12, 2006;

    d.    Dr. Yokan and other staff's failure to timely diagnose and treat the compartment syndrome in Mr. Schoenfeld's leg that continued on October 13, 2006, up to the time compartment pressures were finally measured and fasciotomies performed;

    e.    Dr. Yokan and other staff's failure to adequately debride the muscle and tissue in Mr. Schoenfeld's leg when performing the skin graft surgery on October 17, 2006, thereby causing the need for additional unnecessary surgeries;

    f.    Dr. Yokan and other staff's failure to provide appropriate care and exercise sound judgment in the overall care and treatment of Mr. Schoenfeld based on his history and symptoms, including but not limited to the failure to properly monitor, diagnose, assess and treat Mr. Schoenfeld for compartment syndrome;

    g.    Otherwise breaching the applicable standards of care in the treatment of Mr. Schoenfeld as to the compartment syndrome and grafting/closure of the wounds resulting from the fasciotomies;

    h.    Otherwise breaching the applicable standards of care in the treatment of Mr. Schoenfeld, in ways which may yet be determined.

56.    That as a direct result of Defendants' negligence, medical malpractice and breaches of the applicable standards of care, Plaintiff Keith Schoenfeld sustained losses and damages including, but not limited to the following:

    a.    Permanent injury to his right foot and leg, including but not limited to, extensive muscle loss, nerve damage, scarring and the condition known as drop foot;

    b.    Permanent disability and impairment in the function of his right leg and foot;

      c.      Scarring;

      d.      Past and future medical expenses;

      e.      Past and future disability;

      f.      Past and future loss of earnings and diminution of earning capacity;

      g.      Past and future physical, mental and emotional pain and suffering; and

      h.      Other and further damages and injuries yet to be determined.

57. The value of the damages sustained by Plaintiff Keith Schoenfeld as a result of the Defendants' negligence is in excess of $75,000.00.

## COUNT 2:  LOSS OF CONSORTIUM

58. Plaintiffs reallege Paragraphs 1 through 57 as if fully set forth herein.

59. At the time of the above alleged malpractice and continuing currently, Plaintiff Jennifer Schoenfeld has been the wife of Plaintiff Keith Schoenfeld.

60. As a result of the above alleged malpractice on the part of the Defendants and the resulting injuries and damages sustained by her husband, Plaintiff Jennifer Schoenfeld has been deprived of the full extent of her husband's services, society, companionship, assistance and affections.

61. Plaintiff Jennifer Schoenfeld has sustained losses and damages in an amount greater than $75,000.00.

**WHEREFORE**, Plaintiffs Keith Schoenfeld and Jennifer Schoenfeld respectfully pray for judgment against Defendants Dr. Nicholas Yokan, Sioux Valley Hospital, Sanford Medical Center, Sioux Valley Hospitals & Health System, Sanford Health, Van Demark Orthopedic Specialists, Sioux Valley Clinic, Sanford Clinic Orthopedics and Sports Medicine and Sanford Clinic, as follows:

A.   Awarding damages in favor of Plaintiffs and against each Defendant in an amount in excess of $75,000.00, with the exact amount to be established at trial;

B.   Awarding Plaintiffs all costs and disbursement incurred in these proceedings;

C.   Awarding Plaintiffs interest from and through the date of the judgment; and

D.   Awarding such other relief as the Court deems just and equitable.

**PLAINTIFFS HEREBY DEMAND A TRIAL BY JURY ON ALL ISSUES.**

Dated: __August 12_____, 2008

| | |
|---|---|
| Mark A. Smith, Attorney at Law<br>Attorney For Plaintiffs Keith and<br>Jennifer Schoenfeld | KERFELD LAW OFFICE  P.A.<br>Attorney for Plaintiffs Keith and<br>Jennifer Schoenfeld |
| By:_s/ Mark A. Smith_____<br>Mark A. Smith (#0272140)<br>1671 Laurel Avenue<br>St. Paul, MN 55104<br>Tel: (651) 696-0052<br>Fax: (651) 690-2294 | By:__s/ Mark R. Kerfeld_____<br>Mark R. Kerfeld (#025437X )<br>25 Ninth Avenue North<br>P.O. Box 458<br>Hopkins, MN 55343<br>Tel:  (952) 933-2390<br>Fax: (952) 933-3451 |